UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-20496-MC-WILLIAMS/TORRES

SECURITIES AND EXCHANGE
COMMISSION,

      Applicant,

v.

MINTRADE TECHNOLOGIES, LLC,

      Respondent.
_____/

### REPORT AND RECOMMENDATION ON APPLICATION FOR AN ORDER TO SHOW CAUSE AND AN ORDER ENFORCING AN ADMINISTRATIVE SUBPOENA

This matter is before the Court pursuant to the Securities and Exchange Commission's ("SEC" or "the Commission") Application for an Order to Show Cause and an Order Enforcing an Administrative Subpoena ("the Application") against MinTrade Technologies, LLC ("MinTrade" or "Respondent") filed on February 6, 2019. [D.E. 1]. The MinTrade filed an Opposition Response on February 26, 2019, [D.E. 13], and SEC's Reply followed on March 5, 2019. [D.E. 14]. Having considered the Application, the arguments presented by both parties, and the relevant legal authorities governing the dispute, we hereby **RECOMMEND** that the Application be **GRANTED**.

## I.   *FACTUAL BACKGROUND*

On November 25, 2013, the SEC issued a Formal Order Directing Private Investigation and Designating Officers to Take Testimony in the Matter of Trader's Café ("Formal Order"). [D.E. 1-3]. The Formal Order authorized and designated officers of the Commission to investigate a U.S. day-trading firm known as "Trader's Café." [D.E. 1, p. 2]. The SEC is investigating possible ongoing violations of Section 15(a) of the Securities Act of 1934, which precludes unregistered entities or persons from engaging in "broker-dealer conduct" within the United States, as well as other federal securities law violations. *Id.*

The SEC investigation revealed that Trader's Cafe maintained a "master account" with SureTrader, f/k/a Swiss America, a Bahamian broker-dealer. *Id.* Neither SureTrader nor its CEO, Guy Gentile, are registered as broker-dealers in the United States. *Id.* Despite this, half of its clients reside in this country. *Id.* The investigation's central issues include whether Swiss America Securities, Ltd., d/b/a SureTrader and MintBroker International Ltd., has customers that are United States residents, whether the company has solicited U.S. customers, and the movement of customer funds. *Id.* at 1.

The investigation also linked MinTrade, a Florida limited liability company based in West Palm Beach, to SureTrader and Gentile. *Id.* at 3. The SEC links Gentile to the Trader's Café investigation by way of an individual named Nicholas Abadiotakis, MinTrade's registered agent. *Id.* Abadiotakis has worked as a trader for Stock USA Execution Services, LLC, now known as Mint Global Markets; Gentile,

through a trust controlled by Abadiotakis, owns a majority stake in Stock USA/Mint Global, which clears trades for SureTrader. *Id.*

The SEC issued a subpoena to MinTrade on December 12, 2018, seeking the production of documents related to SureTrader and Gentile and their affiliates. *Id.* MinTrade failed to comply with the subpoena, arguing that the statute of limitations has expired and that the production request is outside the scope of the Formal Order authorizing the investigation. *Id.* The SEC had attempted to confer with MinTrade's counsel, but the counsel failed to respond to email communications. *Id.* The SEC initiated this action on February 6, 2019, seeking to compel MinTrade to comply with the subpoena.

The matter is now fully-briefed and therefore ripe for disposition. In our view, the SEC's subpoena seeks materials relevant to its authorized investigation and we therefore recommend that its Application in this matter be granted.

## II.     LEGAL STANDARD

Pursuant to Section 21(a) and (b) of the Exchange Act, Congress gave the Commission discretion to conduct investigations that it deems necessary to determine whether any person has violated, is violating, or is about to violate any provision of the statute. Section 21(a) of the Exchange Act, 15 U.S.C. § 78(u)(a). The Commission and its officers are empowered to administer oaths and affirmations, subpoena witnesses, compel witness attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records which the

3

Commission deems relevant to the investigation. Section 21(b) of the Exchange Act, 15 U.S.C. § 78(u)(b).

Congress has also authorized the Commission to invoke the aid of any court in the United States within the jurisdiction of which such investigation is being carried on, or where such person resides or carries business, in the case that a person refuses to obey a subpoena. Section 21(c) of the Exchange Act, 15 U.S.C. § 78(u)(c). Such a court may issue an order requiring such person to produce the requested records. *Id.*

### III. ANALYSIS

#### A. *Principles of Comity and Exclusive Jurisdiction*

"Principles of comity come into play when separate courts are presented with the same lawsuit." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1173 (11th Cir. 1982); *See also Lightsey v. Williams*, 526 So. 2d 764, 765 (Fla. 5th DCA 1988) (stating that abatement is appropriate where the two pending actions involve the same parties and the same or substantially the same causes of action). The question is whether the two actions are so similar in parties and issues as to be unnecessarily duplicative. *Polaris Pub. Income Funds v. Einhorn*, 625 So. 2d 128, 129 (Fla. 3d DCA 1993) (granting the stay where the prior-filed New York state proceedings would have disposed of all the issues raised in the Florida complaint). Where the principles of comity apply, one court must yield its jurisdiction, unless it has exclusive jurisdiction over a portion of the subject matter. *Merrill Lynch*, 675 F.2d at 1173.

MinTrade argues that the Application should be denied because the present case is "inextricably tied" to another lawsuit, *S.E.C. v. Gentile*, Case No. 16-cv-1619 (D.N.J.), filed by the SEC against Guy Gentile in New Jersey, which is currently pending on appeal. [D.E. 13, p. 3]. Respondent argues that under the principles of comity, if "a prior court has perfected jurisdiction over the proceedings, the subsequent proceedings should be abated or stayed." *Id.* at 6. Respondent further asserts that the two proceedings are the same or substantially the same because they both involve and arise out of the same formal order and have substantially the same facts and parties. *Id.* at 9. Thus, MinTrade argues that the present proceedings should be abated or stayed pending the resolution of the New Jersey suit. *Id.*

In its reply brief, the SEC asserts that the two cases are separate. The present case concerns potential registration violations, while the New Jersey case concerned a penny stock manipulation scheme. [D.E. 14, p. 4]. The SEC also points out that the Respondent incorrectly stated that the two proceedings arise out of the same formal order. *Id.* The New Jersey case arose from a different formal order issued in New York in 2011, while the present case arose from the Formal Order issued in Miami in 2013. *Id.* The Commission asserts that the instant investigation has nothing to do with the penny stock manipulation scheme and that the issued subpoena does not seek any documents concerning the New Jersey case. *Id.* at 4-5. Therefore, the SEC argues that the principles of comity are not relevant in this case. *Id.* The SEC also argues, that even if the principles of comity are relevant, they are moot because this

Court has exclusive jurisdiction pursuant to Section 21(c) of the Exchange Act, 15 U.S.C. § 78(u)(c).

We agree with the Commission that the two cases are different. The cases involve investigations into different securities laws violations. The present case involves possible registration violations, while the New Jersey actions involved a penny stock manipulation scheme. The present subpoena seeks documents different from and unrelated to the penny stock case. In addition, the two actions arise from different formal orders. Therefore, the two matters do not involve the same or substantially the same causes of action and the New Jersey case would not dispose of all the issues in the present Florida case. *Lightsey*, 526 So. 2d at 765; *Polaris*, 625 So. 2d at 129. Thus, the principles of comity do not apply here. *Id.*

In addition, even if the principles did come into play, the Court would not have to yield jurisdiction if it had exclusive jurisdiction over a portion of the subject matter. *Merrill Lynch*, 675 F.2d at 1173. Pursuant to Section 21(c) of the Exchange Act, the SEC may invoke the aid of any court "within which the jurisdiction of which such investigation or proceeding is carried on, or where such person…carries on business." Section 21(c) of the Exchange Act, 15 U.S.C. § 78(u)(c). Here, the investigation is being conducted in Miami, the document production is sought in the Southern District of Florida, and MinTrade is a company located in the District. [D.E. 14, p. 5]. Therefore, the SEC may invoke this Court's aid in compelling the production of the materials. *Merrill Lynch*, 675 F.2d at 1173.

B. *Nexus and Relevance*

In a proceeding to enforce an administrative subpoena, the district court's role is limited. *EEOC v. Tire Kingdom, Inc.*, 80 F.3d 449, 450 (11th Cir. 1996); *EEOC v. Kloster Cruise Ltd.*, 939 F.2d 920, 922 (11th Cir. 1991). The district court may inquire into (1) whether the administrative investigation is within the agency's authority, (2) whether the agency's demand is too indefinite, and (3) whether the information sought is reasonably relevant. *Tire Kingdom, Inc.*, 80 F.3d at 450; *see also United States v. Florida Azalea Specialists*, 19 F.3d 620, 623 (11th Cir. 1994) (stating that "inquiry is appropriate only into whether the evidence sought is material and relevant to a lawful purpose of the agency").

In determining whether to enforce an administrative subpoena, the Court should consider whether the SEC has shown (1) that the investigation is being conducted pursuant to a legitimate purpose, (2) that the inquiry may be relevant to that purpose, (3) that the information sought is not already within the SEC's possession, and (4) that the administrative steps required have been followed. *United States v. Powell*, 370 U.S. 48, 57-58 (1964); *RNR Enters. Inc. v. SEC*, 122 F.3d 93, 96 (2nd Cir. 1997); *SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1053 (11th Cir. 1973). To defeat a subpoena, the burden of showing that the subpoena is unreasonable or that it was issued for an improper purpose is with the respondent. *Brigadoon Scotch*, 480 F.2d at 1056 (explaining that where the agency's inquiry is authorized by law and the materials are relevant, the burden is "not easily met").

7

"The measure of relevance used in subpoena enforcement actions is quite broad." *Florida Azalea Specialists*, 19 F.3d at 624; *see also Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989) (stating that the administrative agency's subpoena powers are broad-sweeping and a subpoena will survive a relevancy challenge as long as requested material "touches a matter under investigation") (internal quotations and citations omitted).

Here, MinTrade argues that the Application should be denied because the Application does not establish nexus or a direct connection between MinTrade and the Formal Order. [D.E. 13, p. 11]. Respondent argues that the Court should deny the Application as "too indefinite" and unrelated to the scope of the Formal Order. *Id.* The SEC responded by stating that it has broad discretion in investigating potential violations and that a formal order does not limit the potential parties or witnesses from which the Commission can request information. [D.E. 14, p. 2]. The Commission also argues that Respondent has failed to defeat the administrative subpoena because it did not meet its burden in showing that the subpoena was unauthorized or unreasonable. *Id.* at 8.

We find that that SEC has shown that the investigation is being conducted for the legitimate purpose of investigating potential registration violations, the information sought would not be in the Commission's possession from prior investigations into Gentile, and the Commission followed all necessary administrative steps in issuing the Formal Order. The parties dispute whether the information sought is relevant and whether Respondent has met its burden of

8

showing unreasonableness. For the following reasons, we find that the SEC's subpoena should be enforced.

First, the materials requested are relevant to the SEC's investigation. The Commission is investigating SureTrader and Gentile for potential registration violations. [D.E. 14, p. 7]. The subpoena seeks documents from MinTrade concerning any relationship and correspondence MinTrade had with Gentile and his firms, as well as documents concerning MinTrade's formation, the nature of its business, and its bank accounts. *Id.* Even though the connection between the entities may be tenuous, the records requested do "touch on [the] matter" of whether Gentile and his companies violated federal securities laws by engaging in unregistered broker-dealer conduct in the United States. *Sandsend*, 878 F.2d at 882 (enforcing a subpoena where the parties had only a loose connection, but where the bank's financial records touched on a matter under investigation and were relevant); *see also United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950) (stating that the agency may investigate merely on suspicion that someone is violating the law or even just because the agency wants assurances that that law is not being violated).

In addition, Respondent's argument, that MinTrade does not come under the scope of the Formal Order, is unavailing considering that several courts have found that the SEC's investigation is not limited to the parties named in a formal order. *RNR Enters.*, 122 F.3d at 98 (explaining that there is no requirement that the order target a specific company or person by name suspected of violating securities laws); *Sandsend*, 878 F.2d at 881 (stating that the agency's statutory subpoena power

9

extends to persons who are not directly associated with the target of the inquiry); *SEC v. Horowitz & Ullman, P.C.*, No. C80-590A, 1982 WL 1576, at *14 (N.D. Ga. March 4, 1982) (finding that there is no restriction in 15 U.S.C. § 78(u)(b) on the SEC's power to subpoena parties who were not named in the formal order who may have relevant material).

Similarly, the fact that MinTrade was created after the Formal Order was issued does not restrict the Commission's power to subpoena the company. *RNR Enters.*, 122 F.3d at 98 (explaining that there is no requirement that the scope of the investigation be limited to companies that existed before the formal order where the order provided that the investigation would encompass people who "are about to engage" in alleged acts); *Tabet v. SEC*, No. 12cv1596-IE, 2012 WL 3205581, at *4 (S.D. Cal. Aug. 6, 2012) (stating that the time period in the formal order does not limit the SEC's subpoena power to seek material outside of that period) (citing *Davidov v. SEC*, 415 F. Supp. 2d 386, 388, n. 1 (S.D.N.Y. 2006)). Here, the Formal Order named not only Traders Café's officers and employees who may have committed possible violations, but "other persons or entities" who "may have or may be" violating securities laws as well. [D.E. 1-3]. Therefore, the Formal Order is not limited to investigating only Trader's Café or entities that existed at the time the Order was issued.

Furthermore, Respondent did not meet its burden in showing that the subpoena was unreasonable or issued for an improper purpose. *RNR Enters.*, 122 F.3d at 98 (finding that the respondent did not demonstrate the subpoena was issued

in bad faith because it described the alleged SEC improprieties in a conclusory fashion); *SEC v. Knopfler*, 658 F.2d 25, 26 (2nd Cir. 1981) (stating that the opponent of the subpoena cannot meet their burden of showing improper purpose by presenting conclusory allegations). Here, Respondent merely concludes that because of the indirect connection between the parties involved in the investigation, the "actual purpose of this present proceeding appears to be a mere pretext to dig into the affairs of anyone connected to Gentile." [D.E. 13, p. 11]. However, this conclusory statement, without more, does not show that the subpoena issued is unreasonable or that it was issued for an improper purpose. Therefore, Respondent has failed to meet its burden.

### III.  CONCLUSION

For the reasons stated herein, we **RECOMMEND** that the Securities and Exchange Commission's Application for an Order to Show Cause and an Order Enforcing an Administrative Subpoena be **GRANTED**. An Order compelling compliance within fourteen (14) days should be entered.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the Honorable Kathleen M. Williams, United States District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634

(11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND ORDERED** in Chambers at Miami, Florida this 8th day of July, 2019.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge