UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 1:19-mc-20496-WILLIAMS/TORRES

SECURITIES AND EXCHANGE COMMISSION,

    Applicant,

v.

MINTRADE TECHNOLOGIES, LLC,

    Respondent.
_____/

**RESPONDENT, MINTRADE TECHNOLOGIES, INC.'s OBJECTIONS TO THE REPORT AND RECOMMENDATION [D.E. 33]**

The Respondent, MINTRADE TECHNOLOGIES, LLC (Respondent or MINTRADE) by and through the undersigned counsel and pursuant to the Federal Rule of Civil Procedure, hereby respectfully submits these Objections to the Report and Recommendation [D.E.33] and in support thereof states as follows:

**BACKGROUND & PROCEDURAL HISTORY**

1. On February 6, 2019, the SECURITIES AND EXCHANGE COMMISSION ("SEC" or Applicant), sought an Application for an Order to Show Cause and an Order Enforcing Administrative Subpoena (the "Application"). [D.E. 1].

2. As stated in the Application, this action arises out of a Formal Order of Investigation (the "FOI" or "2013 FOI") issued by the SEC, dated November 25, 2013, entitled *In the matter of Traders Café, LLC*. [D.E. 1-3, Exhibit 2, pp. 1-3]. As stated in the 2013 FOI, the SEC believed that "information tends to show" that in 2012, an entity known as Traders Café, LLC ("Traders Café") may have engaged in possible violations of the Securities Act. *Id.*

DANIELS RODRIGUEZ BERKELEY DANIELS CRUZ
4000 PONCE DE LEON BOULEVARD, SUITE 800, CORAL GABLES, FL 33146 ▶ www.drbdc-law.com
T: 305.448.7988    F: 305.448.7978    TOLL FREE: 888.448.7988

3. The SEC asserts that, pursuant to this Trader's Café FOI, they have been undertaking an investigation into an entity known as SureTrader[1] and its purported principal, Guy Gentile, in connection with potential violations of the federal securities laws (referred to by the SEC as the "Investigation"). Per the SEC, issues central to the potential violations include whether Swiss America [solicited] United States customers and the movement of customer funds. See [D.E. 1 at pp. 1-2].

4. The Application urges that the SEC may issue subpoenas upon the Respondent pursuant the 2013 FOI into Trader's Café. [D.E. 1] See 17 C.F.R § 202.5 (Providing that the SEC may engage a formal investigation into purported violations of the Securities Act and other related rules/regulation, and in so doing, the SEC may issue subpoenas to effectuate a legitimate purpose of its formal investigations).

5. On February 26, 2019, the Respondent filed its Response in Opposition to the Application [D.E. 13]. There, the Respondent raised several arguments in opposition, including that the Trader's Café FOI is stale and has no nexus to the Respondent. In Respondent's view, the SEC is improperly attempting to extend its limited subpoena authority into Trader's Café into perpetuity, by daisy chaining that FOI to extend to any person/entity they desire to subpoena. See *infra;* See also: *SEC v. Jerry T. O'Brien,* 467 US 735, 738 n. 1 (1984); H. R. Rep. No. 96-1321, pt. 1, p. 2 (1980).

6. On March 5, 2019, the SEC filed a Reply in Support of their Application. [D.E. 14].

7. On July 8, 2019, Magistrate Judge Edwin G. Torres issued his Report and Recommendation, therein recommending the Application be granted. [D.E. 33].

---

[1] Swiss America Securities, Ltd., now known as MintBroker International Ltd. and doing business as SureTrader ("Swiss America" or "SureTrader"), a Bahamas-based broker-dealer registered with the Securities Commission of the Bahamas.

## RESPONDENT's OBJECTIONS TO THE
## MAGISTRATE JUDGE's REPORT AND RECOMMENDATION ("R&R")

Under 28 U.S.C. § 636, as well as Fed. R. Civ. P. 72(b), any party may serve and file objections to the report and recommendations of the Magistrate Judge. The District Court Judge is to make a ruling *de novo* as to those portions of the report specified and objected to, and may accept, reject or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(c).

The Respondent acknowledges and appreciates the rigorous review applied by the Honorable Magistrate in preparation of the R&R; however, the Respondent respectfully makes these detailed objections to preserve matters for this Court's review and/or any subsequent review. As explained below, Respondent respectfully objects to the following specific grounds:

**I.     as to certain factual statements in the R&R and factual omissions relevant to this Court's analysis;**

**II.    as to the R&R's apparent determination that the 2013 Trader's Café FOI is valid;**

**III.   as to the R&R's determination that there is a nexus between Respondent to the Formal Order of Investigation; and**

### RESPONDENT's SPECIFIC OBJECTIONS

I.  **The Respondent's objection as to certain factual statements and factual omissions relevant to this Court's analysis.**

As addressed in greater depth below, Respondent has argued that the SEC's alleged nexus between the FOI and Respondent is impermissibly tenuous and unreasonably broad in scope. Respondent hereinafter stresses to this Court that the SEC has failed to actually present any evidence of the claimed nexus. This on its own should serve as a basis to deny this Application,

since summary proceedings require the SEC to present some evidence of the alleged nexus, to support their claimed entitlement to initiate the subpoena.[2]

Hereinafter, Respondent directs this Court to its objections with regards to various factual statements and/or omissions in the R&R.

### a) The R&R's statement that "The SEC investigation revealed that Trader's Café maintained a "master account" with SureTrader." [D.E. 33 at p. 2].

The R&R makes the statement that Trader's Café, the target of the FOI, "maintained a "master account" with SureTrader. [D.E. 33, at p. 2]. The Respondent objects to this statement because it is irrelevant hearsay, unsupported by admissible record evidence.

The Application, including its various exhibit attachments, does not actually introduce any evidence to this point. [D.E. 1]. There is no admissible evidence before this Court establishing that Trader's Café ever in fact held a "master account" with SureTrader, nor when this purportedly occurred. Nor is it clear what the SEC (and now the R&R) defines as a "master account," or whether any funds and in what amount(s) were placed in this apparent "master account."

Further, the Respondent additionally asserts that this statement is irrelevant. Even accepting as true that Trader's Café held a "master account" with SureTrader, this does not support any link to the Respondent, an entirely unrelated entity with no clearly established links to either SureTrader, or the actual scope of the FOI, Trader's Café.

---

[2] *SEC v. Universal Financial*, 760 F.2d 1034, 1037 (9th Cir. 1985) (where investors had been afforded virtually all procedural protections which would have been available in plenary proceedings, and had notice of the nature of the proceedings, it was not improper for the district court summarily to adjudicate investors' claims); *SEC v. Ross*, 504 F.3d 1130, 1146 (9th Cir. 2007) ("[Bustos] has not given any evidence that the proceeds of these commissions are located in the District of Oregon, or that he has attempted to establish control over out-of-district assets pursuant to § 754. Absent some evidence that he has obtained jurisdiction over these assets, these cases cannot justify his use of summary proceedings."); *SEC v. American Capital Investments, Inc., et al.*, 99 F.3d 1146, 1147 (9th Cir. 1996) ("Shaw had the opportunity in his moving papers, the hearing, and post-hearing supplemental briefing to establish facts in his support, but he did not do so. Shaw has shown no prejudice from the procedures afforded to him.")

In Respondent's view, the R&R incorrectly places value on the conclusion that Trader's Café held a "master account" with SureTrader. Setting aside Respondent's admissibility objection above, it is of little significance whether Trader's Café ever was a client of SureTrader. As per the SEC's own Application, SureTrader allegedly has "12,000" trades per day, and has "20,000+ clients." [D.E. 1 at p. 2; D.E. 1-4, (Exhibit 3 at p. 2)]. Thus, Trader's Café was, allegedly, one of the over "20,000+" other clients that SureTrade has/had. Under this reasoning, the scope of the FOI into Trader's Café balloons to any of the over 20,000 person(s)/entit(ies) that SureTrader allegedly did business with. In Respondent's view, this is an impermissibly broad scope.

In sum, Respondent objects to the R&R's statements as to the apparent relationship between Trader's Café and SureTrader, as irrelevant and unsupported by any admissible evidence.

**b) The R&R's statement that "Despite this, half of [SureTrader's] clients reside in this country." [D.E. 33 at p. 2].**

The Respondent objects to the statement that "half of [SureTrader's] clients reside in this country" because it is irrelevant hearsay, unsupported by admissible record evidence.

Nothing within the SEC's Application or its supporting exhibits supports this point. [D.E. 1]. There is no admissible evidence before this Court as to whom any of SureTrader's clients are, nor where they reside. Thus, it is unclear the basis for the R&R's determination that "half" of SureTrader's client's reside in the U.S., or what significance that plays to the Application.

Further, the Respondent additionally asserts that this statement is irrelevant. Even accepting as true that SureTrader's clients are residing in the U.S., this does not support any link to the Respondent, an entirely unrelated entity with no clearly established links to either SureTrader, or the actual scope of the FOI, Trader's Café.

    c) **The R&R's statements regarding the apparent "link" between Nicholas Abadiotakis to Guy Gentile. [D.E. 33 at p. 2-3].**

The Respondent objects to the R&R's statements regarding the apparent "link" between Nicholas Abadiotakis ("Abadiotakis") and Guy Gentile ("Gentile") because it is irrelevant hearsay, unsupported by admissible record evidence.

In relevant part, the R&R states:

> The investigation also linked MinTrade, a Florida limited liability company based in West Palm Beach, to SureTrader and Gentile. The SEC links Gentile to the Trader's Café investigation by way of an individual named Nicholas Abadiotakis, MinTrade's registered agent. *Id.* Abadiotakis has worked as a trader for Stock USA Execution Services, LLC, now known as Mint Global Markets; Gentile, through a trust controlled by Abadiotakis, owns a majority stake in Stock USA/Mint Global, which clears trades for SureTrader.

[D.E. 33, at pp. 2-3]

First, the R&R's use of the phrase "the investigation" appears *not* to be derived from the authorized scope of the SEC's investigation, *i.e.* the language of the FOI into Trader's Café, but rather from the SEC's characterization of who(m) it is investigating. As raised below, the SEC cannot simply re-define the scope of its investigation, unmoored from the language of the FOI. The FOI is the entire basis for the SEC's subpoena authority, and thus should be the focus of the Court's analysis, and that FOI does not refer to Gentile nor SureTrader (let alone the Respondent).

Second, this entire quoted section above is unsupported by any admissible evidence.

As it relates to the R&R's statement that Abadiotakis worked for Stock USA Execution Services, LLC, this assertion is not supported by any admissible evidence. It appears that the R&R adopts this statement as true, based apparently upon a screenshot of Abadiotakis' LinkedIn webpage. Respondent asserts that this is not admissible evidence, and moreover it is not even relevant since Stock USA Execution Services, LLC is not at-issue whatsoever in these facts.

The R&R's statement that "Stock USA Execution Services, LLC is now known as Mint Global Markets" is not supported by any evidence whatsoever. [D.E. 33 at pp. 2-3]. Indeed, it is unclear on what evidence the SEC relies upon for this claim, and the R&R cannot simply accept this fact as true. The R&R goes on to make an additional unsupported factual statement, that "Gentile, through a trust controlled by Abadiotakis, owns a majority stake in Stock USA/Mint Global, which clears trades for SureTrader." *Id.* The SEC failed to provide this Court with any basis to accept this statement as true. This Court was not provided any trust documents or other supporting records to establish Gentile's purported ownership interests in either Stock USA Execution Services, LLC or "Mint Global Markets." It is wholly unclear how the R&R reached this conclusion.

Thus, in Respondent's respectful opinion, the Application should be denied because the SEC has failed to introduce evidence of any kind as to the apparent "link" between the FOI and this Respondent, MINTRADE. This is insufficient to support the granting of the Application, even during summary proceedings. *Supra* n. 2.

Finally, Respondent also asserts that, setting aside the lack of evidence, none of the foregoing "facts" are persuasive in finding a link to the Respondent here. Neither Abadiotakis, Stock USA Execution Services, LLC or "Mint Global Markets" are alleged to have any connection to Trader's Café, the target of the SEC's apparent investigation. The SEC has simply inserted these entities into these proceedings to concot a tenuous linkage to the Respondent.

### d) The R&R's statement that MinTrade's counsel failed to respond to email communications. [D.E. 33 at p. 3].

The R&R references that MINTRADE's counsel apparently "failed to respond" to email communications from the SEC. [D.E. 33 at p. 3]. Respondent's undersigned counsel respectfully objects to this statement as irrelevant and unsupported by admissible evidence.

Case 1:19-mc-20496-KMW   Document 35   Entered on FLSD Docket 07/22/2019   Page 8 of 17

CASE NO.:  1:19-mc-20496-KMW
Page **8** of **17**

Respondent's undersigned counsel respectfully asserts that since its retention in this matter, it has diligently responded to communications from the SEC. Respondent's counsel timely filed its opposition response to the Application at-issue and has simply asserted its good faith opposition to the underlying subpoenas at-issue.

**II.    The Respondent's objection as to the R&R's apparent determination that the 2013 Trader's Café FOI is valid and the R&R's apparent determination that the SEC was not required to obtain a new FOI into SureTrader and/or Gentile.**

The R&R's analysis appears to sidestep Respondent's argument that the 2013 Trader's Café FOI is no longer valid. [D.E. 13, pp. 2-6, *et seq.*].

As explained elsewhere, the FOI in question is dated November 25, 2013 (pre-dating Respondent's existence), and is entitled *In the Matter of Trader's Café, LLC*. [D.E. 1-4, Exhibit 3, pp. 1-3]. As stated therein, the SEC obtained that FOI based upon the belief that "information tends to show" that on or before 2012, Trader's Café, LLC ("Trader's Café") may have engaged in possible violations of the Securities Act. *Id.*

Under 17 C.F.R § 202.5(a), the SEC may "make such formal investigations and authorize the use of process." However, this statutory authority to issue subpoenas is plainly limited only to formal investigations; the SEC has no subpoena authority in the absence of a formal investigation. *Id.* ("In such preliminary investigation no process is issued or testimony compelled."). Thus, the SEC's subpoena authority here is entirely premised upon and confined to the scope of the FOI.

But, the R&R neglected to analyze (i) whether the 2013 Trader's Café FOI is actually valid; and/or (ii) whether the SEC was required to obtain a new FOI into SureTrader and/or Gentile, the apparent target of their "investigation." [D.E. 1 at p. 1-2]. Respondent urges that the SEC should

D A N I E L S    R O D R I G U E Z    B E R K E L E Y    D A N I E L S    C R U Z
4000 PONCE DE LEON BOULEVARD, SUITE 800, CORAL GABLES, FL 33146    ▶ www.drbdc-law.com
T : 3 0 5 . 4 4 8 . 7 9 8 8    F : 3 0 5 . 4 4 8 . 7 9 7 8    TOLL  FREE:    8 8 8 . 4 4 8 . 7 9 8 8

obtain a new FOI because the Trader's Café FOI is no longer valid, as that investigation appears to have concluded in 2014/15, with the convictions of Trader's Café's principals.[3]

The R&R appears to accept that the 2013 FOI into Trader's Café has no durational limitation and can remain viable into perpetuity. This is plainly not the case, and such a ruling is contradicted by the five (5) year statute of limitations on SEC enforcement actions.[4] The R&R's analysis allows the SEC to revive a stale FOI, extending it to any person or entity that the SEC deems tangentially relevant to the initial target of the FOI.

This is plainly not what was contemplated by 17 C.F.R § 202.5(a). That statute proscribes that the SEC may undertake so-called "preliminary investigations," and if the SEC deems necessary, they may then seek to open a formal investigation. *Id*. But, it is only upon formal investigations that the SEC has any subpoena authority. *Id*. The SEC can only seek to compel testimony that is "touching the matter under investigation or in question," *i.e.* the 2013 FOI into Trader's Café, not simply whomever the SEC claims it is investigating. *See* 15 U.S.C. § 78u(c).

Here, the SEC attempts to resurrect its FOI into Trader's Café, an entity whom the SEC prosecuted years earlier to delve into matters far-flung from their initial investigatory mandate. The SEC essentially seeks to exploit a loophole in 17 C.F.R § 202.5(a), since Congress neglected to place any time limitations on the viability of an FOI. But, there is a time limit upon which the SEC can pursue its claims (5 years), thus it logically follows that there must be some durational scope on an FOI. Indeed, the legislative intent behind the statute makes clear that Congress intended a durational limitation. *SEC v. Jerry T. O'Brien,* 467 US 735, 738 n. 1 (1984) (Analyzing

---

[3] See *SEC v. Carla Marin*, 19-cv-20493-UU (J. Ungaro) at [D.E. 13-3 (Exhibit "C") (evidencing the SEC's convictions for Securities Act violations on Trader's Café's principals, Albert J. Scipione (Nov. 4, 2015) and Matthew P. Ionno (Aug. 18, 2014)]

[4] See *Gabelli v. SEC*, 568 U.S. 422, 448 (2013) (Holding that a five (5) year statute of limitations applies for SEC to commence action for civil penalties for fraud, and begins to run when the fraud occurs, not when it is discovered); *Kokesh v. SEC*, 137 S. Ct. 1635, 1639-40 (2017) (Holding a five (5) year statute of limitations applies to any action for the enforcement of a civil fine, penalty, forfeiture, pecuniary, disgorgement, or otherwise).

the SEC's subpoena authority under a formal order stating: "The purposes of such an order seem to be to define the scope of the ensuing investigation and to establish limits within which the staff may resort to compulsory process."); See H. R. Rep. No. 96-1321, pt. 1, p. 2 (1980).

In Respondent's view, the R&R should have addressed whether the 2013 Trader's Café FOI is actually valid before even analyzing whether there is a nexus to the Respondent. If the Court finds that the FOI is no longer valid, then the SEC has no subpoena authority. The authorizing statute provides a cogent method where, if during the course of one formal investigation, another matter arises which the SEC seeks to investigate (*e.g.* SureTrader and/or Gentile), the SEC need only seek Commission approval for a new FOI, which contemplates these new matters. But, the statute does not contemplate maintaining FOI's into perpetuity and reviving closed investigations on an *ad hoc* basis unmoored from any oversight. The statute allows the SEC to apply for a new FOI (if such cause exists) for whomever they purport to be investigating, but the statute does not allow the SEC to stretch this FOI beyond its terms. The District Courts are delegated oversight into this process, and the Respondent has asked that the viability of the 2013 FOI be analyzed, which appears to have been overlooked in the R&R.

### III. The Respondent's objections as to the R&R's determination that the subpoenas are relevant and/or that there is a nexus to the Formal Order of Investigation.

The R&R determined that the Respondent here is relevant and has a nexus to the FOI. [D.E. 33, pp. 7-10]. Respondent herein raises its objections as to the analysis applied in reaching this determination.

The R&R cites to the case *United States v. Powell,* 379 U.S. 48 (1964) for certain criteria that should be considered in determining whether to enforce an administrative subpoena, including specifically: (1) the investigation is being conducted pursuant to a legitimate purpose; (2) the

inquiry is relevant to that purpose; (3) the information the Commission seeks is not already in its possession; and (4) the Commission has fulfilled the necessary administrative steps. *Id* at 57-58.

While Respondent does not *per se* object to the R&R's reliance on *Powell* in its analysis of the facts here, the Court should note that *Powell* did <u>not</u> interpret the viability of an SEC subpoena issued pursuant to the statute in question here, 15 U.S.C. § 78u. Rather, that case dealt with a subpoena in the context of the Internal Revenue Service under a markedly different statute.[5]

The Respondent directs this Court to consider the reasoning used in *Arthur Young*, which was an SEC subpoena enforcement action. *SEC v. Arthur Young & Co.*, 584 F.2d 1018 (D.C. Cir. 1978). Although not substantially different, in *Arthur Young*, the court expressly noted that the District Court should "guard" against abuses and ensure that the subpoenas are "within the authority" of the SEC (i.e. within the scope of the FOI). The analysis applied by the court was:

> Moreover, while the statutory powers of federal regulatory agencies to investigate have traditionally been extensive, the Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome. The federal courts stand guard, of course, against abuses of their subpoena-enforcement processes but constitutional mandates aside, the gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable. Resultantly, it has long been clear that it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.

*Id at* 1023–24 (internal citations omitted).

As explained elsewhere, the SEC's authority to issue subpoenas arises out of 17 C.F.R § 202.5(a), which provides in pertinent part that "The Commission may, in its discretion, make such formal investigations and authorize the use of process as it deems necessary to determine whether

---

[5] The *Powell* case addressed the enforcement of a subpoena pursuant to 26 U.S.C.A. § 7602, which provided the IRS the authority to issue subpoenas to person/entities to ensure they complied with relevant provisions of the tax code. Notably, that statute does not provide any real limitations on the IRS's authority to issue subpoenas, whereas the statute providing the SEC with subpoena power, 17 C.F.R § 202.5(a), <u>only</u> allows the SEC with subpoena authority to the extent it is part of a formal investigation.

any person [has/will violate the Securities Act]." The statutory language immediately preceding expressly states that in the absence of a formal investigation, the SEC has no subpoena power. *Id.* ("Where. . . it appears that there may be a violation of the acts administered by the Commission or the rules or regulations thereunder, a preliminary investigation is generally made. In such preliminary investigation no process is issued or testimony compelled."). In turn, the SEC is provided the right to seek judicial enforcement of a subpoena it has issued under a Formal Order of Investigation ("FOI"), to compel a person to "give testimony touching the matter under investigation or in question." 15 U.S.C. § 78u.(c).

Thus, in Respondent's respectful opinion, the Court should consider *Arthur Young* and apply the language of 15 U.S.C. § 78u.(c) and 17 C.F.R § 202.5(a) together to the facts at bar here. The issue to be determined is whether the SEC *established* with competent evidence that there is a nexus as between Respondent here and the purportedly viable FOI into Trader's Café. This is the analysis this Court should apply because the SEC's subpoena authority *only exists* under a valid FOI. *See* 17 C.F.R § 202.5(a). The November 25, 2013 FOI states that the SEC is investigating whether Trader's Café violated provisions of the Securities Act, accordingly *that* is the "the matter under investigation or in question."[6] *See* 15 U.S.C. § 78u.(c).

However, in Respondent's humble opinion, the R&R did not correctly analyze these statutes. Instead, the R&R weighed Respondent's relation to the "the investigation":

> First, the materials requested are relevant to the SEC's investigation. The Commission is investigating SureTrader and Gentile for potential registration violations. [D.E. 14, p. 7]. The subpoena seeks documents from MinTrade concerning any relationship and correspondence MinTrade has with Gentile and his firms . . . the records requested do "touch on [the] matter" of whether Gentile and his companies violated federal securities law. . .

[D.E. 33 at pp. 9].

---

[6] As explained elsewhere, *supra*, the SEC already obtained convictions from the principals of Trader's Café years prior to issuing these present subpoenas, and for that reason the investigation into Trader's Café is finished.

DANIELS RODRIGUEZ BERKELEY DANIELS CRUZ
4000 PONCE DE LEON BOULEVARD, SUITE 800, CORAL GABLES, FL 33146  ▶ www.drbdc-law.com
T: 305.448.7988   F: 305.448.7978   TOLL FREE:  888.448.7988

Here, the R&R first determined that Respondent is relevant to a "legitimate purpose of the investigation." Respondent urges that this is analysis improperly focuses on "the investigation."

The R&R finding that there is a nexus between Respondent and "the investigation," is misguided because the SEC has no general subpoena authority in the context of its "investigations," only when the SEC operates under an FOI. *See* 15 U.S.C. § 78u(c) ("In such preliminary investigation no process is issued or testimony compelled."). The phrase, "the investigation" is an amorphous phrase that emerged out of thin air in the SEC's Application. [D.E. 1 at p. 1, defining "the Investigation"].

There is not a single document before this Court that defines what "the investigation" is, what it includes or does not include, who(m) is subject to it, or any discernible time frame in question. Thus, it is unclear how the R&R can determine that the Respondent is relevant to a legitimate purpose of the investigation since "the investigation" is a sweeping phrase framed on a purely *ad hoc* basis to include whomever the SEC desires to subpoena. Indeed, it appears that the SEC has ostensibly re-written its own regulations regarding the scope of the FOI in its Application, suggesting that the scope of their investigations are somehow not limited to the target of the FOI. This is abhorrent to the express limitations on the SEC's subpoena authority under 15 U.S.C. § 78u and creates an impermissibly broad scope. *See also*: *Arthur Young & Co.*, 584 F.2d at 1023-24 (D.C. Cir. 1978) (". . . it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.").

The R&R disposes with the Respondent's opposition on lack of relevance/nexus premised upon *RNR Enterp.*, finding that the SEC's subpoena authority is "not limited to the parties named in a formal order." [D.E. 33, p. 9]. That case is factually dissimilar. In that case, the formal order at-issue was directed at a discrete specific industry (i.e. Telecommunications Technology

Securities), which squarely encompassed the respondent and was indeed the clearly intended target of the FOI. *RNR Enterp., Inc. v. SEC*, 122 F.3d 93, 98 (2d Cir. 1997). Here, the FOI in question is not discrete or industry-specific, but is directed at one company, Trader's Café.

Respondent does not appear within the scope of the FOI, expressly or by implication. Rather, the apparent nexus to Respondent is premised on a web of vague connections, summarized as follows:

> The investigation also linked MinTrade, a Florida limited liability company based in West Palm Beach, to SureTrader and Gentile. The SEC links Gentile to the Trader's Café investigation by way of an individual named Nicholas Abadiotakis, MinTrade's registered agent. *Id.* Abadiotakis has worked as a trader for Stock USA Execution Services, LLC, now known as Mint Global Markets; Gentile, through a trust controlled by Abadiotakis, owns a majority stake in Stock USA/Mint Global, which clears trades for SureTrader.

[D.E. 33, at pp. 2-3]

As referenced above, the foregoing facts are unsupported by any admissible evidence. Thus, the very basis of the R&R's determination that there is a nexus to Respondent, is based upon inadmissible evidence and this alone should be a basis for denying the Application.

Regardless, the R&R concedes that although "the connection between the entities may be tenuous," there is a nexus between the FOI and Respondent, via apparent connections through Gentile, SureTrader, Stock USA Execution Services, LLC, and/or Mint Global Markets. [D.E. 33, p. 9]. The foundational connection from the FOI is that Trader's Café had a "master account" at SureTrader, but this claim alone broadens the scope of the FOI to encompass any of SureTrader's "20,000+" person/entities. *Supra*. From there, applying the R&R's analysis, any of those "20,000+" person(s) or entities could be daisy-chained to create a link to nearly any other person/entities. In short, the R&R's forgiving analysis provides the SEC with an infinitely broad subpoena authority, which is plainly contrary to the limitations provided within the language of

within 17 C.F.R § 202.5(a) and 15 U.S.C. § 78u.(c). The R&R should not be extending the opinions in *RNR Enterp., et seq.*, to contradict express statutory limitations.

In sum, there is no clearly established link between the Respondent and Trader's Café, and for that reason, the SEC has no authority to issue subpoenas upon the Respondent under that FOI. For that reason, the Respondent's respectful objects to the R&R's finding that there is a nexus between the FOI and Respondent.

## **CONCLUSION**

In summary, Respondent respectfully asserts that the Application should be denied and raises these specific objects to the Report and Recommendation. [D.E. 33]. As set forth herein, Respondent objects as to various factual statements and/or omissions, as well as the analysis applied in terms of the validity of the FOI and the nexus of that FOI to Respondent.

Respondent respectfully urges this Court to note that the SEC has failed to introduce any admissible evidence to underpin its assertion of a nexus to Respondent. This Court should deny the SEC's Application, and if the SEC is able to do so, it can simply obtain an FOI into the actual parties it seeks to subpoena, instead of attempting to revive a stale FOI's that have no connection to the Respondent here.

**Respectfully submitted**,

By: /s/ *Lorne E. Berkeley*
Lorne E. Berkeley, Esq.
Florida Bar No.: 146099
Email:LBerkeley@drbdc-law.com
Alexander L. Wildman, Esq.
Florida Bar No. 116930
Email:Awildman@drbdc-law.com

Attorney for Respondent,
MINTRADE TECHNOLOGIES
4000 Ponce De Leon Boulevard
Suite 800
Coral Gables, Florida 33146
Telephone No.: (305)-448-7988
Facsimile No.: (305) 448-7978

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 22nd day of July, 2019, I electronically filed the above document using CM/ECF or directed service in the method set forth in the attached Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those who are not authorized to receive electronically Notices of Electronic Filing.

/s/ *Lorne E. Berkeley*
Lorne E. Berkeley, Esq.

## SERVICE LIST

Amie Riggle Berlin, Esq.
Email: berlina@sec.gov
Senior Trial Counsel
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile:  (305) 536-4154