UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 19-mc-20496-Willams/Torres

SECURITIES AND EXCHANGE COMMISSION,

    Applicant,

v.

MINTRADE TECHNOLOGIES, LLC,

    Respondent.

_____/

**APPLICANT SECURITIES AND EXCHANGE COMMISSION'S RESPONSE TO RESPONDENT'S OBJECTIONS TO REPORT AND RECOMMENDATION [D.E. 35]**

**I. INTRODUCTION**

Respondent MinTrade Technologies, LLC's objections to the Magistrate Judge's Report and Recommendations are meritless. For the reasons set forth below, the Court should reject the objections [D.E. 35] and adopt the Report and Recommendation [D.E. 33].

**II. MINTRADE'S OBJECTIONS TO FACTS INCLUDED IN THE REPORT AND RECOMMENDATION**

**(Section I of MinTrade's Objections)**

MinTrade objects to four statements and findings in the Report and Recommendation on grounds they: (a) are based on inadmissible evidence; and (b) do not prove that MinTrade itself is relevant to the Commission's investigation. These objections are misplaced and ignore the facts as well as the law concerning summary proceedings to enforce an administrative subpoena.

    **A. MinTrade's Objection Concerning The Sufficiency Of Evidence Is Wrong**

    *1. The Commission's Burden Is Minimal And Can Be Satisfied By A Declaration*

MinTrade's objection about the sufficiency of admissible evidence ignores the well-established burden-shifting framework of a subpoena enforcement proceeding. A subpoena

enforcement application may be granted in summary show cause proceedings. *EEOC v. St. Regis PaperCo.-Krafi Div.*, 717 F.2d 1302, 1304 (9th Cir. 1983) (stating that "[a] subpoena enforcement action is a summary procedure" with no discovery absent "exceptional circumstances"); see also *SEC v. Knopfler*, 658 F.2d 25,26 (2d Cir. 1975) (*per curiam*) ("Commission enforcement proceedings may be summary in nature . . . ."); *United States v. Church of Scientology of Cal.*, 520 F.2d 818, 821 (9th Cir. 1975) (stating that "a district court may limit the application [of the Federal Rules of Civil Procedure] in a proceeding to enforce a summons which is intended to be a summary proceeding").  This summary procedure is appropriate because investigative agencies in general, and the Commission in particular, should be allowed to conduct investigations and enforce subpoenas "free . . . [of] undue interference or delay to conduct an investigation which will adequately develop a factual basis for a determination as to whether particular activities come within the Commission's regulatory authority." *SEC v. Brigadoon Scotch Distributing Co.*, 480 F.2d 1047,1053 (2d Cir. 1973).

In *United States v. Powell*, 379 U.S. 48 (1964), the Supreme Court established the narrow scope of judicial inquiry in an agency subpoena enforcement proceeding.  To establish a *prima facie* case for enforcement, the Commission must demonstrate that (1) the investigation has a legitimate purpose, (2) the information subpoenaed is relevant to that purpose, (3) the Commission does not already possess the documents sought, and (4) the Commission has followed the proper procedural steps. *Id*. at 57-58.  Courts have consistently recognized the SEC's broad statutory authority to issue administrative subpoenas.[1] *See SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 743

---

[1] Section 21(b) of the Exchange Act empowers the Commission, or its designated officers, to subpoena witnesses, compel their attendance, take evidence, and "require the production of any books, papers, correspondence, memoranda, or other records which the Commission deems relevant or material to the inquiry." 15 U.S.C. § 78u(b) (emphasis added). Section 19(c) of the

(1984) ("The provisions vesting the SEC with the power to issue and seek enforcement of subpoenas are expansive."); *SEC v. Dresser Indus.*, 628 F.2d 1368, 1379-80 (D.C. Cif.) (en banc) ("Given this broad statutory mandate, there is virtually no possibility that in issuing this subpoena, the SEC was acting *ultra vires*."); *Arthur Young & Co.*, 584 F.2d at 1023 –24. *See also United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950), (A district court is bound to enforce an administrative subpoena "if the inquiry 'is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.' ").

An agency need only make a "minimal" showing in order to establish a *prima facie* case for subpoena enforcement. *Transocean*, 767 F.3d at 489 ("The Government bears the initial burden to show that the criteria have been met, although the burden to make a prima facie case is 'minimal.'") (internal citations omitted); *United States v. Barrett*, 837 F.3d 1341 (5th Cir. 1988).[2] The agency may satisfy its "minimal" burden by declaration alone. *United States v. Abrahams*, 905 F.2d 1276, 1280 (9th Cir. 1990) (a declaration by the investigating agent is sufficient to substantiate *Powell* requirements); *United States v. Tex. Heart Inst.*, 755 F.2d 469, 474 (5th Cir. 1985) ("That initial burden is a minimal burden, which may be met by a simple affidavit…."), rev'd on other grounds, 72 F.3d at 1422.

---

Securities Act vests the Commission and its designated officers with essentially the same power. See 15 U.S.C. § 77s.

[2] The agency need not establish "probable cause" of a violation or that it had "reasonable grounds" to commence its investigation when seeking subpoena enforcement. *Brigadoon Scotch*, 480 F.2d at 1053; *see Morton Salt Co.*, 338 U.S. at 642 ("[A]n administrative agency] is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.").

### *2. The Commission Filed A Declaration Or Other Evidence Supporting Each Of The Four Facts To Which MinTrade Objects*

In support of the Application to enforce the subpoena at issue, the Commission filed, among other things, the sworn Declaration of Jessica Weissman, Associate Regional Director of the Securities and Exchange Commission who is overseeing the investigation at issue [D.E. 15-1]. Weissman's testimony in the related subpoena enforcement case *SEC v. Marin*, 18-cv-20493 (S.D. Fla.) (Ungarro) is also part of the record in this case [D.E. 19-3]. The four facts with which MinTrade takes issue are all supported by these filings. Specifically:

1. MinTrade objects to the statement in the Report and Recommendation that "The SEC investigation revealed that Trader's Café maintained a master account with SureTrader," on grounds no evidence supports it. [D.E. 35 at p.4].
    - This objection is meritless. This fact is set forth in the Weissman Declaration, which states: "The Miami Investigation has revealed that Traders Café, a U.S.-based day trading firm, maintained an account at SureTrader." [D.E. 15-1 at ¶ 10]. It is also set forth in the Weissman Testimony, where Weissman testified that the investigation has uncovered that Trader's Café had a master account at Sure Trader. [D.E. 19-3 at 92:7-17 (on pdf page 93 of this D.E. filing)].

2. MinTrade objects to the statement in the Report and Recommendation that "Despite this, half of [SureTrader's] clients reside in this country," on grounds no evidence supports it [D.E. 33 at p. 2].
    - This objection is frivolous. The Weissman Declaration includes the sworn statement that: "The Miami investigation has revealed that at least one-half of Sure Trader's clients are United States residents…." [D.E. 15-1 at ¶ 12].

3. MinTrade objects to the statements in the Report and Recommendation that the investigation has revealed a connection between MinTrade CEO Nicholas Abadiotakis and Sure Trader CEO Guy Gentile, and that Gentile owns a majority stake in SureTrader (f/k/a Stock USA) through a trust controlled by Abadiotakis [D.E. 35 at pp.6-7].  Specifically, MinTrade claims there is no evidence to support this.
    - This objection is frivolous.  The Weissman Declaration includes the sworn statement that the investigation has revealed a connection between Abadiotakis and Gentile, and that Gentile owns a majority stake in SureTrader through a trust Abadiotakis controls. [D.E. 15-1 at ¶¶ 15-16].
4. MinTrade objects to the statement in the Report and Recommendation that MinTrade's counsel failed to respond to email communications from Commission staff, on grounds there is no evidence to support this. [D.8.33 at p.3].
    - This objection is frivolous.  The Commission filed our email correspondence with MinTrade's counsel, reflecting the history of communications [D.E. 1-7]. The Weissman Declaration further authenticates this same correspondence. [D.E. 15-1 at ¶ 18].

Thus, MinTrade's objections that certain facts are unsupported by any evidence are frivolous.

### 3. *MinTrade Presented No Evidence To The Contrary*

Once the Commission makes a *prima facie* showing of the *Powell* factors, the burden shifts to the Respondent. *United States v. Centennial Builders, Inc.*, 747 F.2d 678, 680 (11th Cir. 1984) ("Once the government makes this preliminary showing, the burden shifts to the [respondent] 'to disprove one of the four *Powell* criteria, or to demonstrate that judicial enforcement should be

5

denied on the ground that it would be an 'abuse of the court's process.'") (quoting *United States v. Beacon Fed. Sav. & Loan*, 718 F.2d 49, 52 (2d Cir. 1983)).  The Respondent's burden is a heavy one.  The Respondent may only defeat an administrative subpoena by demonstrating that the inquiry is unauthorized or unreasonable. *Brigadoon Scotch,* 480 F.2d at 1056.

MinTrade presented no evidence to demonstrate the inquiry is unauthorized or unreasonable.  Nor did it dispute or present any evidence concerning the facts and findings to which it now objects.  Instead, it argues only that the Commission presented no evidence.  As set forth above, this argument is based on a false premise.

### 4. *MinTrade's Frivolous Objection That The Four Facts At Issue Are Not Relevant*

MinTrade objects that the four facts discussed above are not relevant to the *Powell* factors and therefore cannot be included in the factual background section (or any other section) of the Report and Recommendation.  MinTrade provides no legal support for its position that the Report and Recommendation cannot include the background of this matter and how it arose.  Because there is none.

### III.  MINTRADE'S OBJECTION THAT THE REPORT AND RECOMMENDATION DOES NOT FIND THAT THE FORMAL ORDER OF INVESTIGATION IS VALID

#### (Section II of MinTrade's Objections)

MinTrade argues that the Report and Recommendation fails to analyze (i) whether the 2013 Trader's Cafe Formal Order of Investigation is valid; and (ii) whether the SEC was required to obtain a new Formal Order because SureTrader and Gentile are not listed in the Trader's Café Formal Order [D.E. 35 at pp.8-10].  MinTrade repeats the same arguments it made in its Response to the Application, and the Commission responded to them in greater detail in our Reply [D.E. 14].

MinTrade asserts that a Formal Order of Investigation can only last for five years due to the five-year statute of limitations [D.E. 35 at p.9].  MinTrade provides no legal support for its position

6

that Formal Orders have an expiration date.  Because there is none.  Moreover, the five-year statute of limitations is not relevant and because, in addition to being outside of the scope of the Court's inquiry on a subpoena enforcement matter, the Commission is investigating potential *ongoing* securities law violations.  [D.E. 15-1 at ¶¶ 2, 3, 9].

Next, MinTrade objects on grounds that the Commission has revived a closed investigation.  This is false, and MinTrade presents no evidence to support it [D.E. 35 at pp.9-10].  Instead, as set forth in the Weissman Declaration, the investigation is ongoing. [D.E. 15-1 at ¶¶ 2, 3, 9].  MinTrade presents no evidence to meet its burden for demonstrating that the investigation was ever closed.  Because there is none.

MinTrade also objects, in passing, on grounds that MinTrade did not exist when the Formal Order of Investigation was issued and is not named in the Formal Order. [D.E. 35 at p.8].  This is of no merit.  "There is no statutory restriction on the SEC's power to subpoena third parties not named in the order of investigation who may have materials relevant to the inquiry." *S.E.C. v. Horowitz*, Case No. C80-590A, 1982 WL 1576, at *14 (N.D. Ga. Mar. 4, 1982) (citing 15 U.S.C.A. § 78u(b)).  A Formal Order of Investigation does not identify, let alone limit, the potential parties and witnesses from whom the Commission may seek information.  Rather, Congress vested the Commission with broad authority to investigate potential violations and to subpoena documents based on the Commission's determination of the scope of an investigation. Securities Exchange Act of 1934, § 21(b), 15 U.S.C. § 78u(b) (1976) ("For the purpose of any such investigation,… any member of the Commission or any officer designated by it is empowered to administer oaths and affirmations, subpena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records which the Commission deems relevant or material to the inquiry."); *See also Arthur Young & Co.*, 584 F.2d

at 1029.  Moreover, there is no time restriction based on the Formal Order. *See Tabet v. S.E.C.*, Case No. 12-cv-1596, at *4 (S.D. Cal. Aug. 6, 2012) ("The time period found in a Formal Order does not limit the SEC's ability to seek relevant documents outside that time period") (citing *Davidov v. S.E.C.,* 415 F.Supp.2d 386, 388, n. 1 (S.D.N.Y. 2006).

Nor is there any limitation in the Formal Order prohibiting the Commission from seeking evidence from or concerning entities other than Trader's Café.  To the contrary, the Formal Order explicitly includes potential violations of the broker-dealer registration provisions of the federal securities laws, Section 15(a) of the Securities Act of 1933, by Trader's Café, its affiliates, and "other persons or entities." [D.E. 1-3 at ¶C].  Contrary to MinTrade's hollow assertions, the Formal Order does not limit the scope of the Commission's inquiry to solely seeking evidence from Trader's Café about potential violations by Trader's Café.

### IV.  MINTRADE'S OBJECTION THAT THE REPORT AND RECOMMENDATION FAILS TO FIND A NEXUS BETWEEN MINTRADE AND THE FORMAL ORDER

**(Section III of MinTrade's Objections)**

MinTrade argues for the first time that the Court should instead follow the standard in *SEC v. Arthur Young & Co*., 584 F.2d 1018 (D.C. Cir. 1978), rather than the standard in *Powell* [D.E. 35 at p.11-12].  MinTrade claims that *Arthur Young* prescribes a different standard, where "the issue to be determined is whether the SEC established with competent evidence that there is a nexus between Respondent here and the purportedly viable FOI into Trader's Café." *Id.* at 12.  MinTrade claims that because the Formal Order only references Trader's Café, the investigation is limited to only investigating the entity Trader's Café.  As set forth above, this is not the law.  Further, in support of its objection, MinTrade offers nothing more than its "Respondent's respectful opinion." *Id.*

While MinTrade claims *Powell* is inapplicable because it concerns an I.R.S. subpoena, the *Powell* factors are applied to Commission enforcement actions. *See S.E.C. v. Huff*, 664 F.Supp.2d 1288, 1294 (S.D. Fla. 2009) (J. Rosenbaum) ("[I]n evaluating SEC subpoena enforcement requests, courts have required the SEC to demonstrate four factors identified by the Supreme Court in *United States v. Powell*…."). The Report and Recommendation properly considers these factors [D.E. 33].

Next, MinTrade claims that *Arthur Young* requires the Court to find a nexus between MinTrade itself and the entity Trader's Café, rather than, as set forth in *Powell*, whether the information sought is relevant to the investigation. [D.E. 35 at 12-14]. However, *Arthur Young* does not support this. *Arthur Young* does not analyze the respondent's relationship to the Formal Order or to any person or entity identified therein. Instead, the Court in *Arthur Young* enforced the subpoena upon finding that the documents sought were relevant to the investigation. 584 F.2d at 1029. *See also Powell*, 379 U.S. at 57-58 (The inquiry as to relevance is whether the information sought is relevant to the investigation). The Report and Recommendation includes this same analysis and accordingly, MinTrade's objection is meritless.

Additionally, MinTrade's *Arthur Young* objections are premised on incorrect facts – namely, that the Formal Order of Investigation authorizes the Commission to investigate Trader's Café only and because the Commission already litigated against two principals of Trader's Café, then the investigation must be closed. As set forth above, the Commission presented the Weissman Declaration to demonstrate the investigation is not closed, but is instead ongoing and concerns potential violations of Section 15(a)(1) [D.E. 15]. This is precisely what the Formal Order authorizes the Commission staff to investigate [D.E. 1-3]. As the Formal Order explicitly states, the Formal Order authorizes the staff to investigate potential violations of Section 15(a) of the Exchange Act by not only Trader's Café, but also by "other persons or entities." *Id.* Thus, the Formal Order clearly

authorizes an investigation beyond Trader's Café and its principals, and MinTrade's objection is without merit.

Contrary to MinTrade's objections, the statutes and regulations do not require that the order authorizing the investigation identify by name a specific company or person suspected of violating securities laws. *See RNR Enters., Inc. v. S.E.C.*, 122 F.3d 93, 98 (2nd Cir. 1997) (rejecting respondents' arguments that the district court erred in ordering compliance issued under a Formal Order that did not name respondents and encompassed an entire industry); *O'Brien*, 467 U.S. at 749 ("The S.E.C. often undertakes investigations into suspicious securities transactions without any knowledge of which of the parties involved may have violated the laws."). Nor is it of consequence that the Trader's Café authorizes a broad investigation. *RNR Enters.,* 122 F.3d at 98 (rejecting challenge to subpoena enforcement where Formal Order authorized an industry-wide investigation of possible securities law violations).

Moreover, *Arthur Young* directly contradicts MinTrade's objections. For example, MinTrade relies on *Arthur Young* to argue that the Court should review the relevance of MinTrade to Trader's Café, while the Report and Recommendation incorrectly examines the relevance of the documents sought to the investigation. However, *in Arthur Young*, the Court enforced a Commission subpoena based on a finding that the *evidence* sought in the subpoena were relevant to the investigation. 584 F.2d at 1028. Which is precisely the analysis in the Report and Recommendation.

Accordingly, MinTrade's objections based on an application of *Arthur Young* rather than the Supreme Court standard in *Powell* are meritless.

## V. **CONCLUSION**

For the reasons set forth above, the Court should adopt and ratify the Magistrate Judge's Report and Recommendations [D.E. 33].

August 5, 2019            Respectfully submitted,

By:    <u>Amie Riggle Berlin</u>
Amie Riggle Berlin, Esq.
Senior Trial Counsel
Florida Bar No. 630020
Direct Dial: (305) 982-6322
Email: berlina@sec.gov

Attorney for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300