UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 1:19-mc-20496-WILLIAMS/TORRES

SECURITIES AND EXCHANGE COMMISSION,

    Applicant,

v.

MINTRADE TECHNOLOGIES, LLC,

    Respondent.

_____/

**RESPONDENT's MOTION TO STAY**

The Respondent, MINTRADE TECHNOLOGIES, LLC (Respondent or MinTrade) by and through the undersigned counsel and pursuant to the Federal Rule of Civil Procedure, hereby respectfully submits this Motion to Stay, and in support thereof states as follows:

**PRELIMINARY STATEMENT**

As explained below, the SEC has been engaged in two (2) separate proceedings in this Court seeking to compel compliance with administrative subpoenas premised upon the same set of facts. These two cases include these proceedings and another case referred to hereinafter as the Marin Proceedings. In this case, as well as the Marin Proceedings, the Respondent opposes the enforcement of the subpoenas at-issue because the Formal Order of Investigation ("FOI") at-issue is invalid and lacks any relevance to the Respondent. In the Marin Proceedings, the trial court granted the SEC's Application. However, the Marin Proceedings, decidedly slightly before this Court, are presently on appeal before the Eleventh Circuit Court of Appeals.

The Respondent here moves this Court to stay these proceedings pending the outcome of the Marin Proceedings on appeal. Respondent respectfully requests this Court stay these

proceedings because all notions of judicial economy favor such a result. This is because, should this Court stay these proceedings pending the outcome of that appeal, the ruling in the Marin Proceeding on appeal will ultimately resolve Respondent's opposition here. In Respondent's view, this will provide the most streamlined and efficient result.

If this Court does not grant a stay in this case, Respondent here will be forced to protect its appellate rights and file a Notice of Appeal, placing ostensibly the identical facts and issues before the appellate court, which are already on appeal in the Marin Proceeding. In Respondent's view, this would only create unnecessary litigation.

If this Court were to grant this stay, pending the outcome of the Marin Proceedings on appeal, this will provide a logical and consistent result that will minimize the already extensive litigation on these issues by avoiding two appeals on ostensibly the same issues. Assuming the appeal is in Marin's favor, the result here would likely also be in Respondent's favor. Similarly, if the opposite result were to occur, the Respondent's opposition to the subpoena will ostensibly be addressed on appeal via the Marin Proceedings, thus obviating the need for any identical appeal here. Respondent simply asks that this Court stay the enforcement of the subpoena at-issue until after the Respondent's opposition to the subpoenas can be ultimately decided.

## PROCEDURAL HISTORY

1. On February 6, 2019, the SECURITIES AND EXCHANGE COMMISSION ("SEC" or Applicant), seeking to enforce a subpoena, filed an Application for an Order to Show Cause and an Order Enforcing Administrative Subpoena (the "Application"). [D.E. 1].

2. As stated in the Application, this action arises out of a Formal Order of Investigation (the "FOI" or "2013 FOI") issued by the SEC, dated November 25, 2013, entitled *In the matter of Traders Café, LLC*. [D.E. 1-3, Exhibit 2, pp. 1-3]. As stated in the 2013 FOI, the SEC believed

Case 1:19-mc-20496-KMW   Document 40   Entered on FLSD Docket 11/20/2019   Page 3 of 16

Case No.: 1:19-mc-20496-KMW
Page 3 of 16

that "information tends to show" that in 2012, an entity known as Traders Café, LLC ("Traders Café") may have engaged in possible violations of the Securities Act. *Id*.

3.     The SEC's Application urges that the Trader's Café FOI serves as a basis for serving subpoenas upon the Respondent by relying upon a series of increasingly vague links between Trader's Café and the Respondent. [D.E. 1, pp. 1-3]. Specifically, the SEC asserts that an entity known as Swiss America Securities, Ltd., *d/b/a* SureTrader ("SureTrader"), and its apparent owner, Guy Gentile ("Gentile") *allegedly* interacted with Trader's Café at some point in time. *Id*. The SEC then posits that SureTrader's alleged owner, Gentile, also has an equity interest in another company, Stock USA. *Id*. The SEC then claims that Nicholas Abadiotakis, MinTrade's registered agent, at some point in time, worked at Stock USA.

4.     On February 26, 2019, the Respondent filed its Response in Opposition [D.E. 13]. As argued by Respondent, raising various arguments including: (i) that the Trader's Café FOI is not valid, (ii) that there is no relevancy or nexus between MinTrade and Trader's Café, and (iii) that the SEC has failed to provide any actual actual *evidence* to support the existence of any connection between Trader's Café and MinTrade. *Id*.

5.     On March 5, 2019, the SEC filed their Reply brief. [D.E. 14].

6.     On July 8, 2019, the Honorable Magistrate Edwin G. Torres issued his Report and Recommendations ("the Magistrate's Report"), therein recommending that the SEC's Application be granted. [D.E. 33].

7.     On July 22, 2019, Respondent filed its Objections to the Magistrate's Report. [D.E. 35]. Therein, Respondent objected to various factual findings raised in the Magistrate's Report, and argued that the Trader's Café FOI is not valid and there is no established nexus between that FOI and Respondent. [D.E. 35]

8. On October 8, 2019, this Court entered its Order on the Magistrate's Report. [D.E. 37]. Therein, this Court granted the SEC's Application and adopted the findings in the Magistrate's Report. *Id*.

9. Contemporaneously with this present litigation, the SEC has also initiated separate litigation within this District, seeking to enforce additional other subpoenas, directed at an individual named Carla Marin ("Marin"). *See SEC v. Carla Marin*, 19-cv-20493-UU (U. Ungaro) (the "Marin Proceeding(s)").

10. Undeniably, the two cases are inextricably linked in their facts, law and procedure. Both cases relate to the same Trader's Café FOI, and both cases relate to essentially the same underlying fact pattern. Indeed, the connection between the two cases is largely undisputed insofar as the SEC has filed a Notice of Related Matter in *this* present litigation. [D.E. 3]. Therein, the SEC stated: "The Marin Proceeding and the instant action are both subpoena enforcement actions." Further, the SEC stated that: "In both matters, [the SEC] is seeking to enforce subpoenas issued pursuant to [the Trader's Café FOI] . . . in the Commission's investigation of [SureTrader]. . ." *Id*.

11. In the Marin Proceedings, the SEC *again* seeks to rely upon the Trader's Café FOI to enforce subpoenas as to Marin. As explained within the SEC's Application in that case, the SEC similarly relies upon a series of vague links between Trader's Café and Marin. *See SEC v. Carla Marin*, 19-cv-20493-UU (U. Ungaro) [D.E. 1]. Like here, Marin filed a Response in Opposition to the SEC's Application, asserting that the subpoenas as to Marin are unenforceable on substantially the same[1] grounds raised by Respondent here. *See SEC v. Carla Marin*, 19-cv-20493-UU (J. Ungaro) [D.E. 13]. Specifically, in the Marin Proceeding, Marin opposed the SEC's

---

[1] Admittedly, in the Marin Proceedings, personal jurisdiction as to Marin, a New York resident, is also at-issue. However, like here, Marin challenges the validity and relevancy/nexus of the Trader's Café FOI. Thus, as to those issues, the rulings in the Marin Proceedings would ostensibly determine with finality these issues here.

Application on the grounds that the Trader's Café FOI is not valid, that there is no nexus to Marin, and that the SEC failed to set forth evidence supporting any claimed nexus. *Id.*

12. Like here, the Honorable Ursula Ungaro granted the SEC's Application in the Marin Proceedings. *See SEC v. Carla Marin*, 19-cv-20493-UU (U. Ungaro) [D.E. 63].

13. Thereafter, Marin filed a Notice of Appeal and the Marin Proceedings are presently on appeal before the Eleventh Circuit Court of Appeals. *See SEC v. Carla Marin*, 19-cv-20493-UU (U. Ungaro) [D.E. 66].

14. As explained hereinafter, Respondent urges this Court to stay the enforcement of the subpoenas at-issue here as to MinTrade because the validity of the Trader's Café FOI, as well as the sufficiency of the evidentiary showing put forth by the SEC in support of the claimed nexus, are directly at-issue and on appeal presently. Thus, Respondent urges this Court to delay the enforcement of the subpoenas at-issue here during the pendency of the appeal in the Marin Proceedings, to ensure consistency and unnecessary litigation that may be resolved on appeal.

## MEMORANDUM OF LAW IN SUPPORT

Respondent herein moves this Court to stay the enforcement of the Order. Respondent urges this Court to stay the enforcement of the subpoenas here pending the outcome of the appeal in the Marin Proceedings, insofar as that appeal will ultimately decide issues material to the outcome of this case as well.

Specifically, Respondent's opposition here are largely the same as those raised in the Marin Proceedings, and as such the outcome of that appeal will almost certainly be dispositive on any ruling here. In lieu of Respondent being forced to appeal this case, seeking a ruling on issues already on appeal in the Marin Proceedings, Respondent moves for this stay pursuant to Fed. R.

Civ. P. 62(c),(d), and urges that judicial economy and consistency of rulings favor staying these proceedings in the pendency of the appeal in the Marin Proceedings.

## LEGAL AUTHORITIES

### i. SEC's Subpoena Authority

As set forth in 15 U.S.C. § 78u(a)(1), the SEC "may, in its discretion, make such investigations as it deems necessary to determine whether any person has violated, is violating, or is about to violate [laws]" regulated by the SEC.

However, the SEC's subpoena authority within the context of these investigations depends on whether the investigation is formal (*i.e.* based upon a formal order). 17 C.F.R § 202.5(a) states that the SEC may open a "preliminary investigation" into alleged violations of provisions of law regulated by the SEC. However, during the course of said preliminary investigations, "no process is issued or testimony compelled." *Id*. In its discretion, the SEC may instead elect to "make such formal investigations." *Id*. In the case of "formal investigations," the SEC is authorized "[to use] process as it deems necessary to determine whether any person has violated, is violating, or is about to violate [laws]" regulated by the SEC. *Id*.

It is well-settled that the SEC may only issue subpoenas in the course of formal investigations. *See e.g*. *United States v. Quattrone*, 441 F.3d 153, 163 n.8 (2d Cir. 2006) ("The SEC conducts two types of investigations -- informal (or preliminary) and formal investigations. It cannot issue process or take testimony during the informal stage of the investigation. If, however, the investigation progresses, the SEC may issue a formal administrative order directing investigation, which may provide authority to issue process and compel testimony.") (internal citations omitted).

The SEC's subpoenas at-issue will not be enforced ". . . unless the agency, at an evidentiary hearing, demonstrates that it has complied with the requirements of *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). These are that (1) the agency has a legitimate purpose for the investigation; (2) the inquiry is relevant to that purpose; (3) the agency does not possess the information sought; and (4) the agency has adhered to administrative steps required by law." See *Jerry T. O'Brien, Inc. v. S.E.C.*, 704 F.2d 1065, 1067 (9th Cir. 1983), *rev'd,* 467 U.S. 735 (1984) *rehearing denied* 719 F.2d 300, *certiorari granted* 464 U.S. 1038, *reversed on other grounds* 467 U.S. 735.

### ii. Standard for Issuance of a Stay

A party seeking to stay proceedings pending an appeal generally must first show the following:

(1) A likelihood that the petitioner will prevail on the merits of the appeal;
(2) Irreparable injury to the petitioner unless the stay is granted;
(3) No substantial harm to other interested persons; and
(4) No harm to the public interest.

See *Pitcher v. Laird*, 415 F.2d 743 (5th Cir. 1969); See also: *Hilton* v. *Braunskill*, 481 U. S. 770, 776 (1987).

Pursuant to Fed. R. Civ. P. 62, a party may move to stay the proceedings or enforcement of the trial court's judgment. As it relates to *monetary* judgments, a party may obtain a stay by providing a bond "or other security" and the trial court may grant said stay if the trial court approves the bond or other security. See Fed. R. Civ. P. 62(b). Generally, as it relates to non-monetary judgments, however, Fed. R. Civ. P. 62(c) states that the proceedings are not stayed during an appeal, <u>unless the trial court so orders</u>.

As it relates to injunctions, under Fed. R. Civ. P. 62(d), during the pendency of an appeal, the "[trial] court may suspend, modify . . . or grant the [issuance] of an injunction" and may do so "on terms for bond or other terms that secure the opposing party's rights."

## ARGUMENT

### a. Likelihood of Success on the Merits

First, Respondent must show that there is a likelihood of prevailing on the merits of the appeal. To demonstrate a likelihood of success, the Respondent need not "show a mathematical probability of success" but rather that they are pursuing challenging, serious legal questions that present a need for a "'more deliberative investigation.'" *See Jewish War Veterans of U.S., Inc. v. Gates*, 522 F. Supp. 2d 73, 76 (D.D.C. 2007). Moreover, even if Respondent cannot establish a likelihood of success on appeal, where there is a strong showing on irreparable harm, a stay is appropriate if they "have made out a 'substantial case on the merits." *See Ctr. For Int'l Envtl. Law v. Office of U.S. Trade Representative*, 240 F. Supp. 2d 21, 22 (D.D.C. 2003). *See also*: *Gonzalez ex rel. Gonzalez v. Reno*, 00-11424-D, 2000 WL 381901, at *1 (11th Cir. Apr. 19, 2000) (noting that the decision as to whether to grant a stay pending appeal rests on a "balance of the equities" and that the movant satisfies the first prong by showing a "substantial case on the merits.").

Here, Respondent contends that it does have a likelihood of success on the merits. Respondent is entitled to challenge the SEC's authority to subpoena the Respondent and has done so on various grounds. *See Reisman v. Caplin*, 375 U.S. 440, 449 (1964) (holding an administrative subpoena can be challenged "on any appropriate ground.").

As explained in *Jerry T. O'Brien, Inc.*, the SEC must show "at an evidentiary hearing" that, *inter alia*, "(1) the agency has a legitimate purpose for the investigation; (2) the inquiry is relevant to that purpose; (3) the agency does not possess the information sought; and (4) the agency has

adhered to administrative steps required by law." *See Jerry T. O'Brien, Inc. v. S.E.C.*, 704 F.2d 1065, 1067 (9th Cir. 1983), *rev'd,* 467 U.S. 735 (1984) *rehearing denied* 719 F.2d 300, *certiorari granted* 464 U.S. 1038, *reversed on other grounds* 467 U.S. 735. Here, the notable deficiency in the SEC's Application primarily lies in the second prong: that the inquiry (*i.e.* the subpoena) is relevant to that purpose (*i.e.* the Trader's Café FOI).

Here, the relevance, or nexus, between Respondent and Trader's Café is non-existent. If any nexus did exist, the SEC has failed to set forth a scintilla of evidence supporting that claimed connection between Respondent and Trader's Café. The SEC plainly has failed to meet the evidentiary burden set forth in *Jerry T. O'Brien,* that the Respondent is relevant to the Trader's Café FOI, even under a summary proceeding.[2] This issue is already at-issue in the Marin Proceeding and the outcome there would largely be binding here.

Moreover, Respondent has challenged the validity of the FOI on these facts, considering the fact that a **five (5) year** statute of limitations applies to the SEC for its enforcement actions.[3] Thus, it is illogical that the Trader's Café FOI, dated November 25, 2013, can still be valid and a basis to conduct discovery, in light of the five (5) year statute of limitations applicable to any enforcement action the SEC can bring. Again, this is an issue to be determined in the Marin Proceeding.

---

[2] *SEC v. Ross*, 504 F.3d 1130, 1146 (9th Cir.2007) ("[Bustos] has not given any evidence that the proceeds of these commissions are located in the District of Oregon, or that he has attempted to establish control over out-of-district assets pursuant to § 754. Absent some evidence that he has obtained jurisdiction over these assets, these cases cannot justify his use of summary proceedings."); *SEC v. American Capital Investments, Inc.*, *et al.*,99 F.3d 1146, 1147 (9th Cir.1996) ("Shaw had the opportunity in his moving papers, the hearing, and post-hearing supplemental briefing to establish facts in his support, but he did not do so. Shaw has shown no prejudice from the procedures afforded. . .").

[3] *Gabelli v. SEC*, 568 U.S. 422, 448 (2013) (Holding that a five (5) year statute of limitations applies for SEC to commence action for civil penalties for fraud, and begins to run *when the fraud occurs*, not when it is discovered); *See also*: *Kokesh v. SEC*, 137 S. Ct. 1635, 1639-40 (2017) (Holding a five (5) year statute of limitations applies to any action for the enforcement of a civil fine, penalty, forfeiture, pecuniary, disgorgement, or otherwise).

In sum, Respondent has met its burden of showing "a substantial case on the merits" because the Respondent has set forth clear defects concerning the SEC's authority to issue the underlying subpoenas. The Respondent is not required to show "a mathematical probability of success," but rather need only show that Respondent is pursuing a challenging legal issue that merits a "more deliberative investigation." See *Jewish War Veterans of U.S., Inc.*, 522 F. Supp. 2d at 76 (D.D.C. 2007).

Here, Respondent has met this showing and urges this Court to stay these proceedings, notably because these issues will be resolved in the pending appeal in the Marin Proceeding.

### b. Irreparable Injury

Second, Respondent must show that irreparable injury will occur if a stay is not entered. Irreparable injury has been found to exist where "the very rights [they] seek to protect will have been destroyed [if a stay is not entered]." See *Council on Am. Islamic Relations v. Gaubatz*, 667 F. Supp. 2d 67, 76 (D.D.C. 2009). Irreparable harm is found to exist where the failure to grant a stay will ostensibly destroy the appellant's right to secure appellate review. See *Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979) (". . . the Constitution and laws entitle litigants to have their cases independently reviewed by an appellate tribunal. Meaningful review entails having the reviewing court take a fresh look at the decision of the trial court before it becomes irrevocable. Appellants' right of appeal here will become moot unless the stay is continued pending determination of the appeals."). See also: *Ctr. For Int'l Envtl. Law*, 240 F. Supp. 2d 21, 23 (D.D.C. 2003).

Here, irreparable injury will befall the Respondent if a stay is not entered. At present, the Respondent's objections to the subpoenas are ostensibly *already* on appeal, which favors granting a stay. Of course, if the stay is not granted, the Respondent is entitled to also appeal this Court's

Order as well, and if necessary will do so, but a stay is favored because the Marin Proceeding will obviate the need to do so. Accordingly, Respondent seeks to simply have these proceedings stayed, pending the outcome of the Marin Proceeding, so as to ensure consistent rulings and to limit the amount of litigation on the same essential issues. If the Court does not stay these proceedings, the end result would only be an additional appeal, addressing the same principal issues.

Here, irreparable harm will befall Respondent if a stay is not granted. This is because, if a stay is *not* entered, and Respondent is forced to file a Notice of Appeal, then the Respondent will be left with no viable recourse but to risk penalties for non-compliance with this Court's Order compelling subpoena compliance, so as to effectuate its appellate rights. Thus, if a stay is not entered, Respondent will risk ignoring this Court's Order, in order to challenge this issue on appeal. Alternatively, if Respondent agrees to comply with the subpoena, the Respondent would thereby eradicate her appellate rights by rendering any appeal moot before it can even be litigated.

Thus, because Respondent risks waiving its appellate rights if it does not comply with the subpoena, this is sufficient to meet the requirement of showing irreparable harm, as the risk of waiving appellate rights has categorically been held as sufficient grounds for irreparable harm. See *Providence Journal Co. v. FBI*, 595 F.2d 889 (1st Cir. 1979)).

Notably, the facts before this Court are akin to those found in *Neve*, where a stay was entered under Fed. R. Civ. P. 62(d) in a case where a party (Neve) was compelled to comply with an administrative summons/subpoena. *See United States v. Neve*, 80 F.R.D. 461 (E.D. La. 1978). In that case, Neve appealed an order requiring him to comply with an IRS summons, and sought a stay pending appellate review. In *Neve*, the court concluded that orders on summons/subpoena enforcement proceedings are appealable orders and thus "it follows that with a stay order a witness would suffer no injury while testing the summons." *Id* at 463. Therefore, the *Neve* court concluded

"[that] the stay in this case comes within Fed. R. Civ. P. 62(d) and . . . the Motion to Stay Execution of Judgment will be granted upon the filing of a supersedeas bond in the amount of $250.00." *Id*. Thus, like in *Neve*, this Court should find that these proceedings may be stayed pending appeal pursuant to Fed. R. Civ. P. 62(d).

In short, Respondent simply seeks this Court to delay enforcing these matters until the Eleventh Circuit Court of Appeals makes a ruling on whether the Trader's Café FOI is in fact valid for the purposes asserted here.

   c. *No Substantial Harm to Other Interested Persons or the Public if a Stay is Entered Pending Appeal*

Finally, Respondent must show that no substantial harm to other interested persons or the public if a stay is entered. Here, Respondent asserts that the SEC (or the public generally) will not suffer any harm if a stay is entered.

The movant must finally show that a stay will not substantially injure other interested parties and that the public interest favors granting a stay. However, courts generally balance these final factors in relation to the extent of the showing of likelihood of success on the merits and the showing of irreparable harm. *See Ctr. For Int'l Envtl. Law v. Office of U.S. Trade Representative*, 240 F. Supp. 2d 21, 23 (D.D.C. 2003) ("The remaining two factors – potential harm to plaintiffs and other individuals or to the public interest if a stay is granted – argue against a stay but ultimately do not outweigh defendants'' showing of a substantial case on the merits and irreparable harm. . .").

As it relates to the harm to other interested parties (*i.e*. the SEC), Respondent asserts that entrance of a stay will not substantially harm the SEC.

The SEC will likely contend that a stay will harm their investigation because it would delay them from obtaining information and/or documents they seeks from the Respondent-Appellant.

Case 1:19-mc-20496-KMW Document 40 Entered on FLSD Docket 11/20/2019 Page 13 of 16

Case No.: 1:19-mc-20496-KMW
Page 13 of 16

However, this purported investigation dates back to pre-2013 when the Trader's Café FOI was issued and these proceedings were only initiated in 2019. [D.E. 1-3]. Thus, in Respondent's respectful view, the SEC cannot plausibly claim that they will be substantially harmed by a delay via the entrance of a stay, insofar as their apparent investigation was already several years old before the SEC even initiated these proceedings.

This is akin to the analysis applied in *Reno*, wherein the court there noted that the Immigration and Naturalization Services ("INS") did not show how any "compelling" harm would occur by the entrance of an injunction prohibiting the deportation of the plaintiff pending an appeal, since the INS had not sought to deport the plaintiff in the three (3) months preceding. *See Gonzalez ex rel. Gonzalez v. Reno*, 00-11424-D, 2000 WL 381901, at *2 (11th Cir. Apr. 19, 2000) ("[W]e doubt that an injunction would harm the INS. . . The INS refused to consider Plaintiff's application for asylum more than three months ago. The INS, however, has not sought to remove Plaintiff in the meantime from the United States. The suggestion that an injunction pending appeal, prohibiting the removal of Plaintiff from the United States until Plaintiff's expedited appeal is decided on the merits, will harm the INS is not compelling.").

Here, the Respondent has set forth good faith opposition to the subpoenas and those bases are at-issue on appeal already. The SEC's claimed harm, *i.e.* delay in their investigation, is *de minimis* in light of the context that their investigation has already been ongoing (apparently) for over six (6) years before they even initiated this action. In light of the balancing act this Court should endeavor, and Respondent's showing on the first two prongs of this analysis, Respondent urges that the harm to the SEC (or the public) is inadequate to serve as a basis to deny this Motion.

## **CONCLUSION**

In sum, Respondent urges this Court to enter a stay pursuant to Fed. R. Civ. P. 62(c),(d). This Court should stay these proceedings pending the outcome of the appeal in the Marin Proceedings, and in doing so, obviating the need for the Respondent here to file a Notice of Appeal to adjudicate its appellate rights.  The Marin Proceedings are addressing substantially the same opposition arguments as raised here and thus simply waiting for the ruling in that case provides the most logical and streamlined result.   Denying this Motion will result only in an additional appeal in this case, addressing the same issues already on appeal in the Marin Proceedings. Respondent urges judicial economy favors granting a stay.

In sum,  Respondent has set forth a viable basis for a stay by showing that Respondent has a substantial case on the merits because it has raised clear defects within the SEC's Application. The Respondent will suffer irreparable injury if a stay is not entered (*i.e*. insofar as Respondent would need to risk mooting its appeal or alternatively choosing not to comply with this Court's Order pending the appeal).  The relative injury to the SEC (or the public) is minimal and outweighed by Respondent's showing on the first two (2) prongs.  Respondent urges this Court to act upon its discretion under Fed. R. Civ. P. 62(c) to enter a stay.  Alternatively, this Court can treat its Order as injunctive in nature and enter a stay pursuant to Fed. R. Civ. P. 62(d) and if necessary may require a commensurate bond.

**Dated**: November 20, 2019

                                             **Respectfully submitted**,

By: */s/ Lorne E. Berkeley*
       Lorne E. Berkeley, Esq.
       Florida Bar No.: 146099
       Email: LBerkeley@drbdc-law.com
       Alexander L. Wildman, Esq.
       Florida Bar No. 116930
       Email: Awildman@drbdc-law.com

       Attorney for Respondent
       4000 Ponce De Leon Blvd., Suite 800
       Coral Gables, Florida 33146
       Telephone No.: (305)-448-7988
       Facsimile No.: (305) 448-7978

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 20th day of November, 2019, I electronically filed the above document using CM/ECF or directed service in the method set forth in the attached Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those who are not authorized to receive electronically Notices of Electronic Filing.

                                                       */s/ Lorne E. Berkeley*
                                                       Lorne E. Berkeley, Esq.

**SERVICE LIST**

Amie Riggle Berlin, Esq.
Email: berlina@sec.gov
Senior Trial Counsel
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile:  (305) 536-4154